

**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

FILED
Mar 13, 2026
08:43 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

| | |
|---|---|
| Bobbi Parcher | Docket No. 2025-10-0112 |
| v. | State File No. 62704-2021 |
| Modern Business Associates, Inc., et al. | |
| Appeal from the Court of Workers' Compensation Claims Thomas L. Wyatt, Judge | |

---

### Affirmed as Modified and Remanded

In this interlocutory appeal, the employee sought temporary disability benefits after the treating physician rescinded his earlier assessment placing her at maximum medical improvement. The employee suffered a rotator cuff tear, which the employer accepted as compensable and for which it provided workers' compensation benefits, including surgery. After the employee suffered a recurrent rotator cuff tear, the employer authorized a second surgery. Following a subsequent tear, the employer paid for a third surgery and follow-up care but then argued that the employee was unable to prove this tear arose primarily from the work accident and, therefore, she was not entitled to further benefits. In the alternative, the employer argued that even if the third tear arose primarily from the work accident and caused a new period of temporary disability, benefits should begin on the date the treating physician rescinded his prior assessment of maximum medical improvement, not the date it last paid temporary benefits. Following a hearing, the trial court awarded the requested temporary disability benefits, and the employer has appealed. Having carefully reviewed the record, we affirm the trial court's decision, modify the award of accrued temporary disability benefits, and remand the case.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

Brayden R. Hunter and Gregory H. Fuller, Nashville, Tennessee, for the employer-appellant, Modern Business Associates, Inc.

Bobbi Parcher, employee-appellee, pro se

**Factual and Procedural Background**

On August 16, 2021, Bobbi Parcher ("Employee") injured her right arm and shoulder when she slipped and fell while inventorying a walk-in cooler at a Burger King owned by Modern Business Associates, Inc. ("Employer"). Employee notified Employer of the incident and sought evaluation at an emergency room where she had x-rays taken, was given a wrist brace, and was advised to follow up with a "workers' compensation doctor." In September 2021, Employer provided a panel of orthopedists, and Employee selected Dr. Christopher Bowman as her authorized treating physician. After a course of conservative treatment, Dr. Bowman performed surgery in February 2022, which consisted of a right shoulder arthroscopy to repair the rotator cuff, with extensive debridement and subacromial decompression with acromioplasty.

After surgery, Employee attended physical therapy, but her pain persisted and she showed minimal improvement. She returned to her job but continued to report right arm pain while performing repetitive work. An MRI ordered in January 2024 revealed a torn supraspinatus tendon and biceps tendinitis with a labral tear. Employer authorized a second surgery to repair both conditions, which Dr. Bowman performed in February 2024.

Thereafter, Employee underwent another course of conservative care, receiving injections in her right trapezius for persistent pain post-surgery. She received weekly temporary disability benefits during the periods she was unable to work and underwent a Functional Capacity Evaluation ("FCE") in October. Employee returned to Dr. Bowman on October 24, 2024, at which time Dr. Bowman reviewed the FCE results and assigned permanent work restrictions. He also completed a Final Medical Report, placing Employee at maximum medical improvement ("MMI") and assigning a 6% permanent partial impairment. Employer was unable to accommodate Employee's restrictions, and, as a result, she did not return to work for Employer.

In January 2025, Employee returned to Dr. Bowman, reporting pain in the area of her right trapezius muscle that she related to performing repetitive work at Employer prior to her separation. A subsequent MRI revealed a recurrent right supraspinatus tear, and Dr. Bowman recommended a third surgical procedure. Before authorizing a third surgery, Employer sought information from Dr. Bowman through a series of questionnaires. He responded in the affirmative to the question:

> Is it your expert medical opinion, to a reasonable degree of medical certainty that [Employee's] need for [right shoulder revision] arose primarily (>50%) out of and in the course and scope of [her] employment with [Employer], and specifically, the incident she described as occurring on August 16, 2021?

Dr. Bowman was also asked about Employee's restrictions and confirmed that he rescinded his original assessment of MMI on February 3, 2025, because Employee "continued to

2

have symptoms . . . [and a follow-up MRI] shows a recurrent rotator cuff tear."[1]  After receiving Dr. Bowman's responses, Employer authorized the third surgery, which Dr. Bowman performed on May 21, 2025, but did not reinstate temporary disability benefits. On July 15, 2025, Dr. Bowman responded to a letter sent by Employer inquiring about Employee's work restrictions.  Dr. Bowman responded that he had taken Employee off work after the May 21 surgery, and that she was expected to return to work four to six weeks later and would retain her permanent restrictions.

Thereafter, Employer deposed Dr. Bowman, asking him specifically about the cause of Employee's recurrent tears.  He responded, "[Y]ou tore the one God gave you, you can certainly tear the one Dr. Bowman gives you. . . . You could fall. . . . [T]he repair could not take, so to speak."  He testified that "sometimes you would wonder how the thing ever heals," noting that it does not have a "very good blood supply," and the shoulder joint has such a large range of motion that it puts the muscles and tendons under tortional stresses that create risks for injury.

Dr. Bowman testified that prior to the second surgery, Employee complained of pain at work for approximately five-and-a-half months post-surgery.  She attended physical therapy, and later imaging revealed a torn supraspinatus tendon.  In response to one of the questionnaires, Dr. Bowman noted that Employee told him her shoulder hurt while performing certain work activities and that she was being treated for "rotator cuff disease." Dr. Bowman stated that Employee did not improve like he thought she should after the first surgery, and her ongoing complaints were "just a continuation of the previous injury."  Dr. Bowman also stated there was "no objective way to . . . separate . . . if she was hurt by something else outside of work."  When questioned about her third surgery, Dr. Bowman testified that Employee began to experience pain in her right trapezius muscle about three-and-a-half months after her second surgery.  Dr. Bowman recalled that he sent her for an FCE and placed her at MMI in October 2024, and, when Employee continued to complain of pain, he ordered another MRI in January 2025, which revealed a recurrent full-thickness tear in the right supraspinatus tendon.  As a result, Dr. Bowman rescinded his previous finding of MMI and performed a third surgery in May 2025.

With respect to the most recent surgery, Dr. Bowman testified that Employee "had a rotator cuff tear.  We fixed it, and then she has a subsequent tear . . . . [N]ot all rotator cuff tears heal, and this seems to be one of those."  Dr. Bowman was unsure when or how the recurrent tear occurred, testifying that it can occur because of a new injury, because previous surgeries failed to "take," or because of "accumulated[,] small micro-injuries." He further testified that there was no indication Employee had experienced an intervening event and that he relied on the history she provided him.  During cross-examination, Dr. Bowman theorized that Employee's work conditioning may have caused tissue damage in

---

[1] As the trial court noted in its order, the record contains three questionnaires completed by Dr. Bowman, some of which dealt primarily with her work restrictions.

her right rotator cuff. He also noted that Employee participated in more than 150 sessions of physical therapy.

At the expedited hearing, Employer questioned Employee about an incident in July 2024. Reportedly, Employee had a physical altercation with her sons as they attempted to seize her car keys. In the ensuing struggle, Employee recalled telling one of her sons that he was "hurting [her]" but did not specify which part of her body he hurt. Employee testified she was later arrested and charged with "domestic assault," but "[n]ot convicted of it," and that she told the police about her shoulder injury. In her testimony, Employee denied she suffered an injury as a result of this incident and explained that she was handcuffed so loosely she was able to fasten the seatbelt herself. Employee admitted that she did not report this incident to Dr. Bowman. Contemporaneous treatment notes from the month of that incident detailed progress in her rotator cuff symptoms and revealed no new complaints. Soon thereafter, Dr. Bowman ordered the FCE, which she completed with "reliable effort" on October 3. Although Employee continued to report ongoing pain, Dr. Bowman placed her at MMI on October 24, 2024. As noted above, he later rescinded that MMI determination.

Following the hearing, the trial court determined that: (1) Dr. Bowman's responses to Employer's questionnaire, combined with "the totality of his deposition testimony," was sufficient to show Employee would likely prevail at trial in establishing that the recurrent tears arose primarily out of and in the course and scope of her employment; (2) her injury was not idiopathic; and (3) there was no evidence of an intervening injury. Regarding Employee's entitlement to temporary disability benefits, the trial court noted the unrefuted evidence that Employee had not worked since October 24, 2024, when Dr. Bowman initially placed her at MMI and assigned permanent restrictions based on the results of her FCE.

The court also concluded Employee was likely to prevail at trial in showing that Dr. Bowman's first assessment of MMI was premature and, therefore, she is entitled to a new period of temporary disability benefits based on the recurrent tear. Specifically, the court noted that Dr. Bowman diagnosed a recurrent rotator cuff tear, surgically repaired the tear, related it to the previous work-related tear, and rescinded his earlier assessment of MMI. In its order, the court first stated that Employee is entitled to temporary disability benefits from "the date Dr. Bowman rescinded the previous finding of [MMI] until she either returns to work" or reaches MMI. However, after noting that Employee "has not worked anywhere since October 25, 2024," the court awarded her fifty-nine weeks of temporary disability benefits from October 25, 2024, the day after she stopped working, to December 11, 2025. Finally, the court determined that her weekly compensation rate is the same whether she qualified for temporary total or temporary partial disability benefits. As a result, the court awarded 59 weeks of temporary disability benefits for a total of $37,115.10. Employer has appealed.

4

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id.* Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

**Analysis**

In its notice of appeal, Employer asserts the trial court erred in finding Employee had presented sufficient evidence that her recurrent rotator cuff tear and the associated need for treatment are causally related to her compensable work injury. Employer argues that "the deposition of the authorized treating physician states this injury was not caused by the work incident in August [2021]" and, therefore, Employee is not entitled to further medical treatment for this injury. Employer also argues that the award of temporary disability benefits was erroneous because the trial court misapplied Tennessee Code Annotated section 50-6-102(12). It maintains that Dr. Bowman could not testify to a reasonable degree of medical certainty that the recurrent tear was a direct and natural consequence of her injury. It also asserts that the amount of temporary disability benefits awarded was incorrect because the trial court relied on an incorrect date to calculate those benefits. In response, Employee asserts the trial court properly applied section 50-6-102(12) but asks that we conclude she is owed temporary disability benefits back to the original MMI date because this was the date on which Employee's benefits were terminated based on the premature assessment of MMI.

*Causation*

It is well settled that "[t]he employer . . . shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." Tenn. Code Ann. § 50-6-204(a)(1)(A) (2025). In order to

obtain workers' compensation benefits, the employee's injury or condition must be caused by a "specific incident, or set of incidents, arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(12)(A). An injury arises out of and in the course and scope of employment only if it has been shown that the employment contributed more than fifty percent in causing the injury, considering all causes. Tenn. Code Ann. § 50-6-102(12)(B). Proof of causation requires expert medical testimony based on a reasonable degree of medical certainty. Tenn. Code Ann. § 50-6-102(12)(D)-(E). Moreover, Employee is entitled to any medical care "made reasonably necessary" by the work-related accident "as defined in this chapter." Tenn. Code Ann. § 50-6-204(a)(1)(A).

Further, the Tennessee Supreme Court has made clear that every "direct and natural consequence" of a work-related accident is compensable. *See, e.g.*, *Hudgins v. Glob. Pers. Sols., Inc.*, No. E2023-00792-SC-R3-WC, 2024 Tenn. LEXIS 86 (Tenn. Workers' Comp. Panel Mar. 5, 2024). In *Hudgins*, the Supreme Court's Special Workers' Compensation Appeals Panel addressed an employee's burden of proof in circumstances where "a subsequent or secondary medical condition develops after a work-related injury." *Id.* at *9. The Court determined that an employee must come forward with sufficient evidence to prove that the subsequent injury or medical condition arose primarily out of the work accident. *Id.*

Here, Employer contends that the trial court misapplied Tennessee Code Annotated section 50-6-102(12) because Dr. Bowman failed to provide a sufficient opinion linking the need for the third surgery to the compensable work accident. Specifically, Employer argues that Dr. Bowman's checking a "yes" box to indicate he believed the recurrent tear was primarily the result of Employee's employment is insufficient to establish causation in the absence of an explanation. Further, Employer asserts Dr. Bowman testified that he had no way of objectively determining whether the recurrent tear was caused by her work or an intervening factor. Conversely, Employee argues that the trial court correctly considered the totality of Dr. Bowman's questionnaire responses and testimony in determining that she was likely to prevail at trial in establishing that each tear of her rotator cuff arose primarily out of and in the course and scope of her employment.

We conclude that Employee has come forward with sufficient proof that the additional surgical treatment recommended by Dr. Bowman was "made reasonably necessary" by the work-related accident. In a response to the April 15, 2025 questionnaire, Dr. Bowman stated, to a reasonable degree of medical certainty, that Employee's recurrent tear arose primarily out of and in the course and scope of her fall at work on August 2021 and that the surgery was medically necessary. Although he conceded that it is impossible to objectively determine the precise reason for her recurrent tear, Dr. Bowman testified that Employee had a rotator cuff tear that had been repaired, followed by recurrent tears, noting that "not all rotator cuff tears heal, and this seems to be one of those." Dr. Bowman's opinion as the authorized treating physician is entitled to a presumption of correctness, and

6

we conclude Employer has presented insufficient evidence to rebut that presumption at this stage of the case. *See* Tenn. Code Ann. §§ 50-6-102(12)(E); 50-6-204(a)(3)(H).

*Temporary Disability Benefits*

As we have noted previously, "[a]n injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability." *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at \*7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015). "Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery." *Id.*

Here, Dr. Bowman rescinded his previous opinion that Employee had reached MMI. In their respective briefs on appeal, the parties dispute the date of this rescission.[2] The trial court initially ordered payment of temporary disability benefits beginning as of February 3, 2025, which was the date Dr. Bowman reviewed the results of the MRI revealing the recurrent tear and rescinded MMI. However, when calculating the total of past temporary disability benefits owed, the trial court ordered temporary disability benefits from October 25, 2024, which was the day after Employer ceased TTD based on Dr. Bowman's initial MMI determination. As the record indicates, Employee was assigned work restrictions as of October 25, 2024, and Employer could not accommodate those restrictions. Thus, Employee became eligible for temporary partial disability benefits as of that date. As a result, we affirm the portion of the trial court's order regarding the duration of past temporary disability benefits beginning on October 25, 2024, and we modify the amount of that award to $46,451.49 to reflect the correct calculation.[3] Employee's weekly temporary disability shall remain ongoing as ordered by the trial court until a terminating event occurs.

**Conclusion**

For the foregoing reasons, we modify the trial court's award of past temporary disability benefits to $46,451.49 and affirm the court's order as modified. Costs on appeal are taxed to Employer.

---

[2] In its brief, Employer argues that Dr. Bowman rescinded his previous MMI determination on April 15, 2025, not February 3, 2025. We conclude, however, that the discrepancy is immaterial under the circumstances because Employee is entitled to additional temporary benefits from the date her temporary disability benefits were previously terminated.

[3] From October 25, 2024, through the date of the expedited hearing, December 1, 2025, is 57.571 weeks, which, at a weekly compensation rate of $806.85, entitles Employee to $46,451.49 in past temporary disability benefits.